The Aultman Co. vs. McDonough.

The AULTMAN COMPANY, Appellant, vs. McDONOUGH, Respondent.

*February 26 — April 30, 1901.*

*Replevin: Pleading: Counterclaim: Verdict: Breach of warranty: Principal and agent: Rescission: Ratification: Evidence: Damages.*

1. In an action of replevin, brought by a nonresident mortgagee to recover possession of machinery sold to defendant and mortgaged to secure the purchase price, the defendant, under subds. 1 and 3, sec. 2656, Stats. 1898, may counterclaim damages for breach of warranty of the goods sold, and also damages in trying to operate machinery returned to the plaintiff and for which the mortgaged property was in part taken in exchange.

The Aultman Co. vs. McDonough.

2. In an action of replevin where the answer demands judgment for a return of the property described in the complaint and damages for the unlawful seizure thereof, a verdict which finds the value of the property at another time than that at which it was seized in the action, and fails to find that the defendant was entitled to a return thereof and to assess his damages for such wrongful seizure, does not comply with sec. 2859, Stats. 1898, and will not support a judgment, the provisions of sec. 2888 requiring the judgment to be based upon, and to conform to, the verdict.

3. Where an engine is sold under a warranty and is found defective, the substitution of another engine in its place, the changing of the contract as to the purchase price, and the giving of additional notes secured by mortgage, do not constitute such a complete rescission of the first contract, so far as the first engine was concerned, as will prevent the recovery of damages for any breaches of warranty as to such engine, and damages for loss of time and expenses in trying to make it do good work, it being expressly agreed that the transaction should not have that effect.

4. Where the agent of the seller, in such a case, employed for the purpose of closing the deal, arranges with the purchaser to substitute a different engine and contract, it will be presumed, in the absence of contrary evidence, that he was authorized to agree to a condition that such change should not defeat the purchaser's claim for damages.

5. In such case the principal cannot ratify the transaction so far as to retain the new notes, the mortgage securing them, and the first engine, and at the same time repudiate it as to the reservation of the right to such damages.

6. When an engine is sold under a warranty, and it fails to comply therewith, but the seller requests the purchaser to continue to use and repair it, and promises to pay for the loss of time and repairs, the purchaser may recover special damages for loss of time and expenses in attempting to make the engine work.

APPEAL from a judgment of the circuit court for Marquette county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Hall & Sheldon* and *John Barry*, and oral argument by *F. W. Hall.*

For the respondent there was a brief by *Fowler & McNamara*, and oral argument by *C. A. Fowler.*

The Aultman Co. vs. McDonough.

CASSODAY, C. J.   It appears from the record that July 16, 1898, the plaintiff sold and delivered to the defendant a rebuilt second-hand separator, and a ten-horse Star engine on trucks, with the usual fixtures and extras, for $650, of which $200 was paid down in cash, and three notes, of $150 each, secured by chattel mortgage on the property, taken for the balance; that after using the same for some time the engine was found to be unsatisfactory to the defendant, and so it was returned, and a rebuilt Gaar-Scott engine taken in its place, with an agreement on the part of the defendant to pay to the plaintiff $300 additional, evidenced by three promissory notes of $100 each, all the six notes amounting to $750 to be secured by chattel mortgage on the property. When the first note for $150 became due, the defendant made default and refused payment, which had been demanded, and thereupon the plaintiff demanded possession of the property covered by the mortgage, which the defendant refused to give.   May 3, 1899, the plaintiff, as such mortgagee, commenced this action of replevin for the property covered by the second mortgage.

The defendant, by way of answer and counterclaim, denied certain allegations of the complaint, and admitted others, to the effect that he purchased the first machinery in July, 1898, and made the cash payment and gave the three notes and chattel mortgage, as stated, but alleged that the engine was to be rebuilt, and was warranted and guaranteed to be in perfect working order, and that it would perform the work of running the separator and attachments, and would be perfectly satisfactory; that the defendant purchased such property relying wholly on such warranty and guaranty; that it was not rebuilt as agreed, but was fraudulently covered with a thick coat of paint to conceal the rust and worn condition; that it was so old, worn out, rusted, and dilapidated and out of repair as to be impossible of use; that at the request of the plaintiff the defendant

continued to try to use the same, and to put and keep the
same in repair, on the promises of the plaintiff that it would
make the matter right, and afterwards that it would pro-
cure another engine for the defendant as soon as it could
get a suitable one, and that it would make good the defend-
ant's loss of time and damage by reason of such defects; that
the defendant lost two thirds of his time in consequence,
and did not do more than ten days' work therewith during
the two months and over that he was trying the same; that,
by and in consequence of such failure and breach of war-
ranty, the defendant was damaged in the sum of $450. The
answer also admitted that the plaintiff took back such first
engine, and delivered to the defendant another, for which the
defendant agreed to pay $300 additional, and did give three
notes in addition to the three already held by the plaintiff,
all secured by chattel mortgage on such second engine and
machinery, as stated, but alleged that the defendant took such
second engine on the plaintiff's agreement and warranty that
it would make good to the defendant the damages he had sus-
tained by reason of such failure of the first engine, and
warranted and guaranteed the second to be rebuilt, and to
work as good as new, and to do the work of running the
separator and corn sheller perfectly and satisfactorily; that
the second engine failed to do such work as warranted and
guaranteed; that, in addition to lesser defects, the pump
and injector of the engine were defective, worn, and out of
order, and would not work, and in consequence thereof the
whole engine was useless; that the plaintiff was forthwith
notified of such defects, and it agreed to replace and repair
the same, but failed; that, in pursuance of the plaintiff's re-
quest to keep trying to use such engine, the defendant lost
one half his time, and his custom and patronage, and was
obliged to quit work; and that in consequence of such breach
of warranty of the second engine the defendant sustained
damages to the amount of $400. The answer prays judg-

ment that the aggregate amount of damages which the defendant has thus sustained, $850, should be applied as an offset to the payment and satisfaction of the six notes and chattel mortgage, and that such notes be canceled and surrendered, and that the defendant should recover from the plaintiff, in addition, by way of damages, $100, together with his costs and disbursements herein. The plaintiff, replying, took issue with the several allegations of such counterclaim.

At the close of the trial the jury returned a special verdict to the effect (1) that there was a breach of the plaintiff's warranty upon the second engine delivered to the defendant; (2) that the second engine, as delivered to the defendant, was worth $275; (3) that the second engine would have been worth, had it been as warranted by the plaintiff, $750; (4) that the defendant's damages by virtue of his loss of time and expenses for repairs in running the second engine were $85.25; (5) that the defendant's damages by reason of loss of time and expenses for repairs in running the first engine were $228. Upon such verdict the court adjudged and decreed that the plaintiff deliver to the defendant the notes and mortgage described in the complaint, and the same were thereby adjudged paid and canceled; that the plaintiff return to the defendant the property replevied therein; that the defendant have and recover of the plaintiff the amount of $2.45, by which his damages exceeded the amount of the plaintiff's notes at the time of the seizure; that the defendant have and recover of the plaintiff his costs and disbursements herein, taxed at $83.83; that, in the event that the plaintiff shall fail to return the property to the defendant within thirty days after the service of notice of the entry of this judgment, the defendant have and recover of the plaintiff the additional sum of $475, which is hereby found and adjudged by the court, upon the evidence adduced herein, to be the value of the said property at the time it

was seized by the plaintiff under the writ of replevin herein, together with $33.25, the interest thereon from May 3, 1899, the date of its seizure. From the judgment so entered, the plaintiff brings this appeal.

As indicated in the statement, the plaintiff, as mortgagee, brought this action of replevin by reason of the defendant's default in payment of a part of the purchase price of the machinery covered by the mortgage. The right to maintain such an action is undisputed. *Gage v. Wayland*, 67 Wis. 566; *Rice v. Kahn*, 70 Wis. 323; *Hill v. Merriman*, 72 Wis. 483. Of course, the plaintiff's special interest in the property is limited by the amount of the mortgage debt. *Gage v. Allen*, 84 Wis. 323.

The defendant, by way of counterclaim, sought to extinguish or reduce such special interest by alleging damages for the breach of warranty on his purchase of the engine covered by the mortgage, and also damages for loss of time and expenses in trying to operate the engine returned to the plaintiff, and for which the engine covered by the mortgage was, in part, taken in exchange. Such counterclaim arose out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, and is connected with the subject of the action, within the meaning of the statute, especially as the plaintiff is a nonresident. Subd. 1, 3, sec. 2656, Stats. 1898.

The statute provides that, " in an action of replevin, if the property have not been delivered to the plaintiff, or the defendant by his answer claim a return thereof, the jury shall assess the value of the property if their verdict be in favor of the plaintiff, or if they find in favor of the defendant that he is entitled to a return thereof, and may at the same time assess the damages, if they are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking or withholding such property." Sec. 2859. Here the defendant, by his answer, did claim

"the return of the property in the complaint described, and for damages for the wrongful seizure thereof." Nevertheless the jury failed to assess the value of the property when seized in replevin, and also failed to find that the defendant was entitled to a return thereof, or to assess his damages for such wrongful seizure, as so claimed in the answer. So the verdict does not conform to the requirements of the statute. The value of the engine replevied, as found by the jury, relates to the time when it was delivered to the defendant by the plaintiff, and not to the time it was seized in this action. The statute also provides that "if the property have been delivered to the plaintiff and a defendant claim a return thereof, judgment for the defendant may be for a return of the property or the value thereof, in case a return cannot be had, and damages for taking and withholding the same." Sec. 2888. Such judgment is, of course, to be based upon and conform to the verdict thus prescribed. There was nothing in either of those sections of the statute to preclude the court and jury from determining the questions of damages alleged in the counterclaim, and put in issue by the reply. Such alleged cause of action for damages for breach of warranty was properly one triable at law, and by a jury. Up to the rendition of the verdict, it was treated by the trial court and the respective counsel as an issue to be tried by a jury, and was so tried. True, the prayer of the answer is for equitable relief, as well as legal relief; and upon the rendition of the verdict the trial court assumed full equitable jurisdiction, and entered a decree or judgment as indicated in the statement. Where a case involves two causes of action, one legal and the other equitable, the latter should, as a general rule, be first tried by the court. *Harrison v. Juneau Bank*, 17 Wis. 340; *Gunn v. Madigan*, 28 Wis. 158; *Cameron v. White*, 74 Wis. 427.

Counsel for the plaintiff contends, in effect, that the taking back of the old engine by the plaintiff, and delivering

to the defendant the second engine in its place, and the giving of the three additional notes therefor by the defendant, as stated, constituted a complete rescission of the first contract, so far as the first engine was concerned, and a complete satisfaction of any breaches of warranty as to that engine. Such would seem to be the inference, were it not for the fact that there is evidence on the part of the defendant tending to prove that in making such deal he expressly reserved the right to recover damages under the warranty of that engine for loss of time and expenses in trying to make that engine work, and that the plaintiff's agent with whom such new deal was perfected expressly agreed that the plaintiff would settle with the defendant for such damages when his notes became due. It is claimed that the agent had no authority to bind the plaintiff in that respect. But he was the plaintiff's agent for the purpose of closing the deal, and it is not made to appear that he did not have such authority. Certainly the plaintiff cannot ratify the transaction so far as to retain the three additional notes and mortgage and the old engine, and at the same time repudiate it as to such reservation of right to such damages.

Error is assigned because the court allowed the defendant to recover damages for the loss of time and expenses in trying to make the first engine work,— especially for the length of time indicated. But it is alleged in the answer, in effect, that by the request of the plaintiff the defendant continued to try to use that engine, and to put and keep the same in repair, and that he did so upon the plaintiff's promise to make the matter right and make good such loss of time and damage. There appears to be some evidence to prove such allegations. The same is true, to a certain extent, as to the second engine. Undoubtedly, it is competent to allege and prove special damages arising directly out of special circumstances. *C. Aultman & Co. v. Case*, 68 Wis. 612. The general rule as to the measure of dam-

ages in such cases is well understood. *J. I. Case P. Works v. Niles & Scott Co.* 90 Wis. 590, 608; *Parry Mfg. Co. v. Tobin*, 106 Wis. 290. We are forced to the conclusion that there was a mistrial in this case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.